No. 65,013

In the Matter of WILLIS BOYD EVANS, JR., *Respondent.*

(804 P.2d 344)

Opinion filed January 18, 1991.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause and was on the brief, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*Stephen M. Joseph,* of Joseph, Robison & Anderson, P.A., of Wichita, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the disciplinary administrator against Willis Boyd Evans, Jr., of Wichita, Kansas, an attorney admitted to the practice of law in Kansas.

The complaint filed against respondent alleges violations of Canons 1, 6, 7, and 9 of the Code of Professional Responsibility, Supreme Court Rule 225 (1990 Kan. Ct. R. Annot. 164), and the Model Rules of Profession Conduct (MRPC) 1.3, 1.4, 1.15, and 1.16, Supreme Court Rule 226 (1990 Kan. Ct. R. Annot. 210).

The facts are not in dispute. In June 1987, respondent was retained by Ron Caron, the complainant, to collect a trade debt of $6,351.32. Respondent agreed to represent Caron for 25% of the proceeds collected.

In September 1987, respondent collected $500 on this debt and, on September 17, 1987, forwarded $375 to complainant. Respondent then received the following payments from this debt, which were deposited into his trust account:

| | |
|---|---|
| 11/20/87 .................. | $ 500 |
| 12/31/87 .................. | 1,500 |
| 9/28/88 .................... | 500 |

During the time that these proceeds remained in respondent's trust account, the balance of the account frequently fell below the amount of proceeds collected on the Caron debt.

Respondent informed complainant in August 1988 that proceeds had been received on the debt, but he failed to forward the money collected. Complainant wrote to respondent on September

27, 1988, expressing his dissatisfaction with respondent's handling of the collection matter, and sought copies of all correspondence and court notices concerning the case.

In a letter dated January 5, 1989, respondent was advised that complainant had retained another attorney to represent him in the collection proceedings. In the letter, the attorney asked respondent to contact him to make arrangements to obtain the files and other records. An additional letter to respondent, dated March 10, 1989, indicated that complainant's new counsel had attempted unsuccessfully to contact respondent by phone. In the letter, the new counsel arranged to be at respondent's office at a particular time to pick up complainant's files.

A complaint was filed with the disciplinary administrator's office in March 1989. A letter from the disciplinary administrator was sent to respondent on March 29, 1989, informing him of the complaint and advising him that the matter would be investigated. Attempts were made to contact respondent about the complaint, but respondent did not cooperate with the investigation.

On November 29, 1989, respondent paid $2,900 to complainant, which represented all the monies collected on the account, a refund of the $125 fee retained after receipt of the first payment, and interest.

The Kansas Board for Discipline of Attorneys held a hearing on the complaint and, on April 10, 1990, filed its report with the Clerk of the Appellate Courts. At that hearing, the parties stipulated to the alleged misconduct prior and subsequent to March 1, 1988. The panel unanimously concluded that, prior to March 1, 1988, respondent violated DR 1-102(A)(6) (1990 Kan. Ct. R. Annot. 165); DR 6-101(A)(3) (1990 Kan. Ct. R. Annot. 188); DR 7-101(A)(2) (1990 Kan. Ct. R. Annot. 193); DR 9-102(B)(1), (3), and (4) (1990 Kan. Ct. R. Annot. 204); and Supreme Court Rule 207 (1990 Kan. Ct. R. Annot. 141). The panel further found that, after March 1, 1988, respondent violated Supreme Court Rule 226, MRPC 1.3 (1990 Kan. Ct. R. Annot. 219); 1.4 (1990 Kan. Ct. R. Annot. 220); 1.15(d)(2)(i), (iii), and (iv) (1990 Kan. Ct. R. Annot. 247); and 8.4(g) (1990 Kan. Ct. R. Annot. 290). The panel recommended that the respondent be suspended from the practice of law for two years. The panel further recommended the suspension be effective immediately because it

believed respondent was suffering from a diminished ability to function.

We note that the panel found numerous mitigating factors, the most important being that the respondent remitted all funds collected, and that he was obviously suffering from a mental or emotional disability or impairment. The panel also found numerous aggravating factors, most of which revolved around respondent's mental and emotional state at the time of the hearing. Specifically, the panel was concerned about his apparent functional disability and his failure to acknowledge the problems or to commence the treatment recommended by Dr. Theodore Moeller, a clinical psychologist.

Dr. Moeller conducted a complete psychological evaluation of respondent and diagnosed him as having major recurrent depression, alcohol dependency, and an adjustment disorder with mixed emotional features. Dr. Moeller described the depression as a narrowing of perception which made respondent unable to perceive as wide a spectrum of feelings or experiences as those who are not depressed. The behavior associated with this type of depression includes lack of motivation, procrastination, and lack of appropriate judgment at times, which creates an inability to deal with issues as they arise. Dr. Moeller assured the panel that respondent was not malingering. Dr. Moeller also noted that the depression caused diminished intellectual ability. The results of the overall tests indicated that, at times in the past, respondent's I.Q. test results were much higher, and the doctor believed they could be higher again in the future.

Concerning the second diagnosis of untreated alcohol dependency, the doctor indicated that, although respondent had abstained from drinking for several months, adequate treatment to overcome the problems that arose from the drinking required some kind of rehabilitative effort, such as the widely accessible Alcoholics Anonymous.

The third diagnosis of "adjustment disorder with mixed emotional features" is an emotional disorder that occurs in almost every person's life when some type of adjustment is required. Dr. Moeller noted that respondent was expending more energy and worry on the disciplinary complaint than on the adjustment disorder.

Dr. Moeller recommended a treatment plan requiring respondent to do a number of things. If these things were done, and if respondent was supervised by a peer, Dr. Moeller believed respondent could continue to practice law while learning to deal with his depression. These things included attendance at Alcoholics Anonymous meetings, psychotherapy, antidepressant medication as necessary, and family involvement.

Dr. Moeller testified that, assuming respondent did all the things recommended, his prognosis was favorable. The doctor indicated he thought respondent would be in group therapy at least 12 months, at which point he would have sufficiently recovered some awareness that would enable him to determine whether he was continuing to benefit from his participation. The doctor also believed that marital counseling should be continued on an as-needed basis and that AA participation should be on a regular basis, attending at least once a week forever. During the course of his testimony, the doctor asserted and reasserted his belief that respondent would be able to handle a legal practice if supervised by a peer.

The panel was obviously concerned with respondent's ability to function as a practicing attorney while he is receiving treatment for his depression. The disciplinary administrator, on the other hand, endorsed the respondent's proposed plan of supervision. The disciplinary administrator continues to support the plan. Although noting that respondent's condition and appearance at the time of the hearing caused concern, the disciplinary administrator expresses his belief that respondent can practice law competently and honestly. He points out that the hearing on the disciplinary complaint was conducted in March 1990; since that hearing, the disciplinary administrator has been in contact with respondent's counsel, who indicates that respondent seems to be functioning well, is attending AA meetings, and is receiving therapy. Based upon the information provided by respondent's counsel and personal meetings with respondent, the disciplinary administrator expresses his belief that respondent should receive an opportunity to continue practicing law under the suggested plan.

After a careful review of the record, we are of the opinion that imposition of discipline should be suspended and that respondent be placed on probation.

IT IS THE ORDER OF THE COURT that imposition of discipline against respondent Willis Boyd Evans, Jr., be and is hereby suspended and that he be placed on probation for two years under the following conditions:

1. That he practice under the supervision of Ronald J. Wilkinson;
2. that he continue in regular AA meetings on a weekly basis;
3. that he continue in therapy sessions with Dr. Moeller until released by Dr. Moeller and, while in therapy, follow all of Dr. Moeller's requests;
4. that respondent submit quarterly reports from Dr. Moeller to the disciplinary administrator reporting whether respondent is attending sessions regularly and following requests satisfactorily;
5. that two signatures be required on the respondent's trust account, that of Evans and that of Wilkinson, and that monthly reconciliations of that trust account be completed by both; and
6. that he not violate any of the Model Rules of Professional Conduct.

Mr. Wilkinson, as supervising attorney, shall report respondent's progress to the disciplinary administrator on a quarterly basis. The disciplinary administrator shall report to this court at the end of each year of respondent's probation.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to the respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports and that respondent pay the costs of these proceedings.