No. 68,480

In the Matter of CHARLES K. POMEROY, *Respondent.*

(850 P.2d 222)

Opinion filed April 16, 1993.

*Paula B. Martin*, special deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was with her on the formal complaint and brief for petitioner.

*Frank S. Eschmann*, of Ascough, Eschmann, Oyler, P.A., of Topeka, argued the cause and was on the brief for respondent. *Charles K. Pomeroy*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Charles K. Pomeroy, of Topeka, an attorney admitted to the practice of law in Kansas.

This action arises out of the conduct of Charles K. Pomeroy in his handling of the estate of Dale L. Pence. The formal complaint alleged violations of Model Rules of Professional Conduct 1.4 (Communication) (1992 Kan. Ct. R. Annot. 251); 4.1 (Truthfulness in Statements to Others) (1992 Kan. Ct. R. Annot. 308); 8.4(b) (Committing a Criminal Act that Reflects Adversely on the Lawyer's Honesty, Trustworthiness, or Fitness as a Lawyer in Other Respects); 8.4(c) (Engaging in Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation); 8.4(d) (Engaging in Conduct that is Prejudicial to the Administration of Justice); and 8.4(g) (Engaging in Conduct that Adversely Reflects on the Lawyer's Fitness to Practice Law) (1992 Kan. Ct. R. Annot. 328).

The matter was heard before a panel appointed by the Chairman of the Kansas Board for Discipline of Attorneys. The parties stipulated to the following facts:

"1. Charles K. Pomeroy is an attorney at law, practicing at 935 SW Western, Topeka, Kansas 66606.

"2. Dale L. Pence died on November 8, 1991, leaving a Last Will and Testament naming Charles K. Pomeroy as the Executor.

"3. On November 22, 1991, the heirs of Mr. Pence, including two daughters, Denise Gillenwater and Janice Sims, met with Mr. Pomeroy. Mr. Pomeroy was given various documents, bills and a savings account pass book

from Capitol Federal Savings and Loan. He directed the heirs to forward Mr. Pence's bills to him for payment.

"4. On December 20, 1991, Ms. Gillenwater paid her father's bills, including utility bills, insurance premiums and real estate taxes, which had been forwarded to Mr. Pomeroy, but had not been paid.

"5. On January 3, 1992, Ms. Gillenwater called the Shawnee County Probate Court and learned that the Petition for Probate was filed on December 26, 1991, Case No. 91 P 524.

"6. On January 4, 1992, Ms. Gillenwater received a year end statement from Capitol Federal Savings and Loan, which showed that Mr. Pence's balance in his savings account of $17,923.66 had been withdrawn on December 24, 1991.

"7. On January 6, 1992, Ms. Gillenwater and Ms. Sims went to Capitol Federal where they were shown a copy of Letters Testamentary that Mr. Pomeroy had presented as authority to withdraw the funds. The Letters Testamentary bore Case No. 91 P 891 and the signature of Judge Frank Yeoman, and was file-stamped December 20. The year was not legible.

"8. Judge Yeoman had not issued Letters Testamentary to Mr. Pomeroy nor had he signed the document presented by Mr. Pomeroy to Capitol Federal. The document presented to Capitol Federal had not been filed with the Court.

"9. On January 6, 1992, Ms. Gillenwater and Ms. Sims received copies of pleadings filed in Case No. 91 P 524, including a Notice of Hearing for January 23, 1992. The Respondent, Charles Pomeroy, also contacted them personally, principally to obtain waivers of the hearing.

"10. The heirs retained attorney Danton C. Hejtmanek to represent them at this hearing and to oppose the appointment of Mr. Pomeroy as Executor. At the hearing on January 23, 1992, Ms. Gillenwater was appointed Executrix.

"11. The funds withdrawn from Capitol Federal on December 24, 1991, were deposited by Mr. Pomeroy on that same day into a bank account at Bank IV, in Topeka, in the name of Dale L. Pence Estate.

"12. On January 8, 1992, a representative from Capitol Federal called the Respondent, Charles Pomeroy, to inform him that they needed a certified copy of the Letters Testamentary or the money needed to be returned.

"13. On January 9, 1992, the amount of the original withdrawal from Capitol Federal ($17,923.66) was withdrawn from Bank IV and returned to Capitol Federal. The money withdrawn from Bank IV was done so with a check from the estate account opened at Bank IV on December 24, 1991. All interest accruing on the Bank IV account from December 24, 1991, to January 1, 1992, was returned. The only deposits to the Bank IV account were by the Respondent, Charles Pomeroy, to cover the amount of the filing fee for opening the estate and the costs of the checks.

"14. The Respondent, Charles Pomeroy, was charged with one count of making a false writing (D felony) and one count of forgery (E felony) in the case styled *The State of Kansas v. Charles K. Pomeroy*, Case No. 92 CR

498, in the District Court of Shawnee County, Kansas. On May 14, 1992, Mr. Pomeroy entered a plea of 'no contest' to one count of forgery and the State dismissed the remaining count of making a false writing. The Court accepted the plea of 'no contest.' "

Before the hearing panel, respondent generally admitted to a lack of communication with his client, Ms. Gillenwater, but specifically denied that Ms. Gillenwater left two messages on his answering machine during the week of December 9, 1991.

Based upon all evidence presented, the panel found by clear and convincing evidence that respondent violated MRPC 1.4, 4.1, and 8.4(b), (c), (d), and (g). The panel recommended that respondent be suspended from the practice of law for two years, and, if respondent is permitted to return to the practice of law after suspension, that his law practice be supervised by another attorney for three years.

Respondent filed his exceptions to the final hearing report of the panel, contending that the panel's conclusion of law with respect to violation of MRPC 1.4 (Communication) was not supported by the evidence. He contended that the evidence was insufficient to establish that he failed to keep his client reasonably informed about the status of the case. Additionally, respondent took exception to the recommended discipline.

After hearing arguments of counsel and the statement of respondent, and after considering the briefs filed and the entire record, we conclude that there is sufficient evidence based on the stipulated facts and additional facts presented at the hearing to support the panel's determination that respondent violated MRPC 1.4, 4.1, and 8.4(b), (c), (d), and (g).

Respondent takes issue with the recommended discipline, suggesting that a more appropriate discipline would be to place him on probation under the supervision of another Kansas attorney instead of suspending his license for a period of two years. Respondent argues that his actions of forging a district judge's signature and withdrawing estate funds from Capitol Federal were a direct result of his state of depression. According to respondent, because of his depression, he felt compelled to get something done on the estate that day. According to his statement and testimony, when he found the courthouse closed on December 24, 1991, he returned to his office in frustration and proceeded,

in an exercise of extremely poor judgment, to "dummy-up" a set of Letters Testamentary so that he could withdraw funds and begin the administration of the decedent's estate.

We note respondent's sincerity. His statement to this court, as well as his counsel's statement, suggests that respondent's actions in the forgery were acts of desperation resulting from a state of extreme depression. Nevertheless, respondent mishandled client funds by creating a false court order to effectuate a transfer of money. This conduct was criminal and arose directly out of his practice of law.

Before the hearing panel, the respondent sought a recommendation of discipline short of disbarment. Respondent's counsel argued for "a period of definite suspension of six months," recommending that respondent "complete a treatment program for depression." No plan of probation was presented to the panel nor was one considered by the panel.

Contrary to the position he asserted before the hearing panel on July 8, 1992, respondent now contends that any suspension imposed by this court would be too harsh and that over the past seven months, by continuation of his treatment for depression, respondent is now well enough to practice law under the supervision of another Kansas attorney.

Respondent contends that his wrongful act did not harm society, that he has good qualities, and that both he and society will be better off by allowing him to practice law. His attorney argues that the key consideration should be that respondent has resolved his problems.

No doubt respondent would be well served were this court to place him on probation under the supervision of a Kansas attorney. Our responsibility, however, involves not only what would be in the best interests of respondent but also what serves the best interests of the legal profession and the citizens of this state.

Respondent argues that we have granted probation or public censure in similar cases. *In re Linn*, 245 Kan. 570, 781 P.2d 738 (1989); *In re Black*, 247 Kan. 664, 801 P.2d 1319 (1990); *In re Evans*, 248 Kan. 176, 804 P.2d 344 (1991); *In re Stephens*, 248 Kan. 186, 804 P.2d 1005 (1991); *In re Keil*, 248 Kan. 629, 809 P.2d 531 (1991); *In re McKenna*, 249 Kan. 215, 813 P.2d 929 (1991); *In re Heaven*, 249 Kan. 224, 813 P.2d 928 (1991); *In re*

*Copeland,* 250 Kan. 283, 823 P.2d 802 (1992); *In re Kershner,* 250 Kan. 383, 827 P.2d 1189 (1992). According to his argument, we have granted probation or public censure because of a desire to salvage lawyers where they "lacked dishonest or selfish motives," where their conduct did not harm their clients and "most importantly, [where] each of the attorneys involved tended to have mitigating circumstances such as an alcohol or drug problem, or a psychological or emotional problem impairing them at the time of the ethical violations."

It would serve no useful purpose to outline the facts in each of the above cases. Our review of the disciplinary proceedings cited by respondent reveals that none of the above cases involved a finding that the criminal conduct arose from the attorney's practice of law or that the criminal conduct affected the attorney's ability to practice law. *In re Kershner* involves the only cited case where a Kansas attorney was convicted of a felony and not suspended or disbarred. We note respondent Gary Kershner was not engaged in the practice of law at the time of his felonious act and his conduct did not arise out of the attorney-client relationship. One final factor distinguishes this case from all others cited by respondent. This case involves a violation of MRPC 4.1 (Truthfulness in Statements to Others).

Perhaps a more analogous case is *In re Schmidt,* 246 Kan. 178, 787 P.2d 1201 (1990). In 1983, Nancy J. Schmidt voluntarily surrendered her certificate to practice law in Kansas as a result of (1) forging a deceased's signature to his will, (2) forging the signatures of witnesses to the will, (3) notarizing the forged signatures, (4) offering the forged will for probate, (5) transporting witnesses to testify on deposition in support of the will, and (6) attempting to settle the matter in order to avoid detection. We accepted her surrender of license and her certificate to practice law was voided. *In re Schmidt,* 233 Kan. 724, 665 P.2d 1108 (1983).

Schmidt was charged with the crime of making a false writing in violation of K.S.A. 21-3711; she entered into a diversion agreement. Upon successful completion of her diversion agreement, Schmidt applied for reinstatement. Upon hearing and recommendation of a panel of the Board for Discipline of Attorneys, her petition for reinstatement was denied.

While there are differences between *Schmidt* and respondent's case, both involve criminal acts directly involved with the practice of law. Schmidt's actions, not unlike respondent's actions, were directed toward the wishes of her deceased client. Both involved felonious conduct interfering with the administration of justice, false swearing, misrepresentation, fraud, and acts adversely reflecting on the lawyer's fitness to practice law.

The ABA Standards for Imposing Lawyer Sanctions 5.0 (1986) addresses recommended sanctions for violations of duties owed to the public. ABA Standard 5.1 provides that "the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation." Disbarment generally is appropriate when

"(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; . . . or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." (ABA Standard 5.11)

The Introduction to ABA Standard 5.0 states:

"The most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct."

Respondent was charged with violations of K.S.A. 21-3710 (forgery) and K.S.A. 21-3711 (making a false writing). He entered a plea of no contest to forgery and the State dismissed the count of making a false writing.

K.S.A. 21-3710 provides:

"(1) Forgery is knowingly and with intent to defraud:
(a) Making, altering or endorsing any written instrument in such a manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such real person; or altering any written instrument in such manner that it purports to have been made at another time or with different provisions without the authority of the maker thereof; or making, altering or endorsing

any written instrument in such manner that it purports to have been made, altered or endorsed with the authority of one who did not give such authority; or

(b) Issuing or delivering such written instrument knowing it to have been thus made, altered or endorsed; or

(c) Possessing, with intent to issue or deliver, any such written instrument knowing it to have been thus made, altered or endorsed.

(2) Forgery is a class E felony."

Respondent engaged in serious criminal conduct involving dishonesty, fraud, deceit, false swearing, and misrepresentation. His actions in forging a district judge's signature in order to withdraw funds from decedent's account, although not for his own gain, involved the intentional interference with the administration of justice.

The public expects a lawyer to be honest. Respondent was dishonest. The public expects a lawyer to abide by the law. Respondent committed a felony—forgery in the discharge of his duties as an officer of the court. Public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct. The conduct of respondent is conduct for which disbarment generally is appropriate.

The hearing panel does not recommend disbarment. Before making its recommendation to this court, the panel found the following factors in mitigation:

"1. The Respondent lacked a dishonest or selfish motive;

"2. The Respondent's personal or emotional problems during the time in question;

"3. The Respondent's actions to prevent financial damage to his clients and to rectify his misconduct;

"4. The present and past attitude of the Respondent as shown by his cooperation during the hearing and his full and free acknowledgement of his prior transgressions;

"5. The letters from clients, friends and lawyers in support of the Respondent;

"6. The Respondent's interim counseling and therapy in pursuit of rehabilitation;

"7. The imposition of other criminal penalties and sanctions with regard to the Respondent's transgressions; [and]

"8. The Respondent's remorse."

The panel noted that Judge Yeoman did not appear and testify in support of the respondent and that Denise Gillenwater, who

was present, did not express her satisfaction with restitution, but specifically requested the panel to impose discipline on the respondent. The court has considered all of the above, as well as the additional matters in mitigation in the form of a diagnostic interview report and letter concerning respondent from Dr. William S. Logan, Director, Department of Law and Psychiatry, Menninger Clinic.

We, like the panel, also have before us matters in aggravation involving four separate informal admonitions of respondent imposed by the Kansas Board for Discipline of Attorneys. The first complaint was received October 21, 1988, based on a violation of diligence, communication, and failure to cooperate which arose out of respondent's handling of a small estate. An informal admonition was imposed on February 15, 1989.

A second letter of complaint, dated October 27, 1988, involved a violation of competence, diligence, communication, and lack of cooperation. This case arose from respondent's handling of two codicils to a last will and testament. An informal admonition was imposed on February 15, 1989.

A third letter of complaint was dated January 18, 1990. Investigation revealed that respondent violated MRPC 1.15(b) (1992 Kan. Ct. R. Annot. 281), which requires prompt notification of receipt of funds and delivery of those funds to the client. At the time, respondent was acting as an escrow agent on a contract to purchase property. Informal admonition was imposed October 19, 1990.

Finally, a fourth letter of complaint was dated July 12, 1990. Respondent received an informal admonition, imposed on November 28, 1990, for a lack of communication arising from a landlord/tenant action he was handling.

The panel recommended a definite period of suspension. We have no hesitation in rejecting respondent's request for probation and believe, based upon the hearing and record, that indefinite suspension from the practice of law is the appropriate discipline.

IT IS THEREFORE ORDERED that respondent, Charles K. Pomeroy, be indefinitely suspended from the practice of law in the State of Kansas.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1992 Kan. Ct. R. Annot. 176).

IT IS FURTHER ORDERED that any time after the expiration of three years' suspension, respondent may apply for reinstatement under Supreme Court Rule 219 (1992 Kan. Ct. R. Annot. 180).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to the respondent.