No. 73,728

In the Matter of ALDO P. CALLER, *Respondent*.

(899 P.2d 468)

Opinion filed July 14, 1995.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, and *Stanton A. Hazlett*, deputy disciplinary administrator, were on the formal complaint for petitioner.

*Louis F. Eisenbarth* of Topeka, argued the cause for respondent, and *Aldo P. Caller*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Aldo P. Caller, an attorney admitted to the practice of law in the State of Kansas whose business address is in Kansas City, Missouri.

The pertinent facts are not in dispute and were summarized by the hearing panel as follows:

"Respondent represented Tanya Gambrill-Hendricks in a personal injury action filed in the District Court of Wyandotte County against Sunflower Racing, Inc., the corporation which owns and operates The Woodlands. In response to pretrial dispository motions filed by the defendant, Respondent filed a brief to which he attached an affidavit which purportedly was signed by his client. Prior to filing his response to the defendant's motions, Respondent prepared the affidavit which was to be signed by his client. All facts set out in the affidavit were contained in a deposition of the plaintiff which had previously been taken. Respondent called his client to discuss the contents of the affidavit he was preparing and then met with his client at a McDonald's restaurant in Bonner Springs to review the document prior to execution. After reading the affidavit, Ms. Gambrill-Hendricks signed the verification page.

"Prior to filing the response, Respondent made further revisions to the affidavit and called his client to arrange for another meeting to sign the revised affidavit. Ms. Gambrill-Hendricks failed to appear for the meeting, having been detained at work. Respondent called his client to determine why she had not met him as planned and reviewed the changes with her over the phone and obtained her permission to attach the previously signed verification page to the revised affidavit.

"After preparing the response for filing, Respondent could not locate the original signed affidavit. Realizing that it was too late to obtain his client's signature on the new affidavit, Respondent signed Ms. Gambrill-Hendricks' name to the affidavit and placed it on his secretary's desk to notarize. Respondent's secretary

notarized the signature. This document was attached to the brief and filed with the court.

"The motions filed by the defendant were denied by Judge David Lamar, the district court judge who presided over the case. Judge Lamar indicated that he relied upon deposition testimony, not the affidavit, in making his ruling.

"Prior to trial, Respondent did not tell his client, the judge or opposing counsel that the signature on the affidavit was not that of his client. The case was tried to a jury. Prior to trial, counsel for the defendant obtained the signature of plaintiff on a previously unsigned set of interrogatories. During the testimony of the plaintiff, counsel for the defendant examined Ms. Gambrill-Hendricks about the difference between the signatures on the affidavit and on the interrogatories. Ms. Gambrill-Hendricks testified that both signatures were hers. Respondent did not correct his client or . . . set the record straight at the time the incorrect testimony was elicited.

"On the evening following the examination of his client about the signatures, Respondent discussed the situation with the senior member of his law firm, Steven Borel. Mr. Borel testified that he helped Respondent find applicable Rules of Professional Conduct, but did not make a judgment as to the action which Respondent should take. At the first break in the trial the following day, Respondent obtained consent from his client to inform the judge of the facts surrounding the signature on the affidavit and went to Judge Lamar and explained the situation. Judge Lamar brought the defense counsel into his chambers. The defense attorney sought a dismissal of the case with prejudice and Respondent offered to dismiss without prejudice. Judge Lamar did not grant a dismissal, but ruled that the trial could not continue until a full disclosure had been made to the jury. Respondent withdrew from presentation of the case and the senior partner, Mr. Borel, finished the case.

"Respondent was called as a witness and testified that he had signed the affidavit, not his client. The jury determined that the plaintiff had suffered damages in the amount of $90,900.00, that the plaintiff was 28% at fault and the defendant was 72% at fault. This verdict was further reduced by the court in the amount of $2,580.00 to conform with the amount claimed by plaintiff in the pretrial order. After the trial, Tanya Gambrill-Hendricks signed a new affidavit reaffirming the contents of the affidavit signed by Respondent.

"The Respondent presented several witnesses who testified to Respondent's legal ability and fine character. He also introduced numerous letters attesting to his character and ability as a lawyer, including one from the foreman of the Gambrill-Hendricks jury."

The hearing panel found respondent had violated MRPC 1.4 (1994 Kan. Ct. R. Annot. 302) (client communication); MRPC 3.3 (1994 Kan. Ct. R. Annot. 348) (candor toward tribunal); MRPC 3.4 (1994 Kan. Ct. R. Annot. 352) (fairness to opposing party and

counsel); and MRPC 8.4(c), (d), and (g) (1994 Kan. Ct. R. Annot. 379) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; engaging in conduct prejudicial to administration of justice; and engaging in other conduct adversely reflecting on the lawyer's fitness to practice law). No exceptions have been filed to the final report of the hearing panel.

Obviously, the forging of a document, securing notarization thereof, and filing the document in court constituted serious misconduct. The final hearing report states that the panel "agonized over a recommended disposition in this case."

The closest Kansas case, factually, is *In re Schmidt*, 246 Kan. 178, 787 P.2d 1201 (1990). In comparing *Schmidt* to the facts herein, the panel reasoned as follows:

"In *Schmidt*, the respondent voluntarily surrendered her license to practice after having 1) forged a deceased client's signature to his will; 2) forged the signatures of the witnesses to the will; 3) notarized the forged signatures; 4) offered the forged will for probate; 5) transported witnesses to testify in support of the will; and 6) attempted to settle the matter in part to avoid disclosure of the forgeries. The court denied respondent's petition for reinstatement citing the panel's findings that the respondent had committed very serious ethical violations.

"The most significant differences between *Schmidt* and this case are the following:

"1. Ms. Schmidt forged the signature of the decedent and the witnesses and then offered the document for probate. She falsely signed a document purporting to be the will of a decedent, which it was not. The facts set out in the affidavit to which respondent signed his client's name had been verified by the client and were consistent with deposition testimony already before the court.

"2. The effect of Ms. Schmidt's acts, had she been successful, would have been to cause an invalid will to be probated, changing the disposition of the decedent's assets and damaging other persons. There was really no effect whatsoever caused by the acts of the respondent.

"3. Ms. Schmidt attempted to secure perjured testimony.

"4. Ms. Schmidt not only did not attempt to remedy her misconduct, she tried to cover it up. Respondent took remedial measures within a reasonable time following his delayed realization of the seriousness of what he had done. He testified at trial concerning the conduct and had another attorney complete the case."

The panel then stated:

"Although the content of the affidavit was not false, the document purports to be sworn to by a person other than the person who actually signed the document. The respondent's conduct in this case was knowing, but the panel is convinced

that until the testimony was elicited from his client concerning the discrepancy in the signatures, he did not understand the seriousness of what he had done. His reaction at that point was one of near panic. The testimony of the partner in his firm concerning respondent's reaction and the testimony of the other witnesses called by the respondent have convinced the panel that for some reason, respondent was unaware of the seriousness of his having signed the affidavit.

"No injury was caused by the conduct of the respondent for two reasons: one, the judge did not rely on the affidavit in making his ruling, and two, respondent took remedial action at the trial once it finally dawned on him what he had done. Clearly, the actions of the respondent created some potential for harm, but since the affidavit was consistent with the deposition testimony, that potential is slight. The affidavit would never have been a factor in the trial itself had not the defense counsel attempted to discredit the plaintiff by calling into question the signatures."

The panel found that aggravating factors were absent and that many mitigating factors were present. Included therein were, *inter alia*, no prior disciplinary proceedings, no selfish motive, and extreme remorse. The panel then recommended that the discipline of published censure be imposed.

We accept the panel's findings, conclusions, and recommended discipline. Like the panel, we conclude that the unique facts herein warrant the imposition of a less severe discipline than would normally be imposed for misconduct in these categories.

IT IS THEREFORE ORDERED that Aldo P. Caller be censured in accordance with Supreme Court Rule 203(a)(3) (1994 Kan. Ct. R. Annot. 189) for his violation of the Model Rules of Professional Conduct.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein be assessed to respondent.