No. 77,821

In the Matter of MARK ALLEN ROY, *Respondent.*

933 P.2d 662

Opinion filed March 7, 1997.

*Marty M. Snyder,* deputy disciplinary administrator, argued the cause, and *Mark F. Anderson,* disciplinary administrator, was with her on the formal complaint for the petitioner.

*Jonathan C. Becker,* of Overland Park, argued the cause for respondent, and *Mark Allen Roy,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator against Mark Allen Roy, an attorney admitted to practice in Kansas whose business address is Overland Park, Kansas.

The facts are not in dispute and were admitted by the respondent. The hearing panel found by clear and convincing evidence the following:

"1. On January 6, 1994, respondent Mark Roy met with Fred and Tina Fields to discuss representation in a Chapter 13 bankruptcy filing. The Fields filled out new client information forms on that date.

"2. On February 19, 1994, the Fields paid a $150.00 retainer to respondent Roy and gave him a copy of a Notice of Sheriff's Sale on their residence set for March 17, 1994.

"3. On February 23, 1994, respondent Roy sent a letter to his clients stating it was imperative to file the bankruptcy petition prior to March 17, 1994, to prevent the sale. He requested that they contact him upon receipt of the letter to discuss their intentions on proceeding.

"4. On March 7, 1994, respondent Roy sent Mr. Fields a form letter listing the information that still needed to be provided and requesting that Mr. Fields call to schedule an appointment upon receipt of the letter. Sometime after March 7, 1994, respondent Roy met with Mrs. Fields and received the $510.00 balance of his fees. He emphasized at that time that the bankruptcy petition would need to be filed by March 16, 1994, to stop the Sheriff's sale.

"5. Communication between respondent Roy and the Fields deteriorated after that time, and on or about March 16, 1994, Mrs. Fields told respondent in a telephone conversation that she would probably not be able to get to his office to sign the schedules or petition.

"6. At that point, respondent Roy prepared and signed a basic bankruptcy petition form, forged his client's signatures on it and filed it with the bankruptcy court on March 16, 1994. He did not have his clients' express authority to file a petition or to sign it on their behalf. He did not prepare or file the schedules. He did fax a copy of the petition to the attorney handling the foreclosure and the Sheriff's sale was halted.

"7. Later on March 16, 1994, Mr. Fields called respondent Roy's office and told respondent they had decided not file for bankruptcy. Respondent Roy told Mr. Fields the petition had already been filed because his wife had indicated she could not get to the office but had not indicated a decision not to file.

"8. Rather than taking steps to correct the unauthorized filing, respondent Roy elected to do nothing for six weeks until filing a motion to dismiss the bankruptcy petition. On its own motion, the bankruptcy court dismissed the petition on May 4, 1994, with the final decree of dismissal filed on September 12, 1994.

"9. In early 1995, Mr. Fields contacted respondent Roy because the bankruptcy showed up on his credit reports and he requested help in clearing this up. At that time respondent Roy self-reported the violation to the Disciplinary Administrator's Office and subsequently to Judge John Flanagan, United States Bankruptcy Court. The matter was referred to the United States Attorney for criminal investigation, but the U.S. Attorney declined to prosecute. The bankruptcy petition still appears on the Fields' credit report as of July 24, 1996."

The respondent admitted and the hearing panel found the respondent had violated Model Rules of Professional Conduct (MRPC) 1.1 (1996 Kan. Ct. R. Annot. 257) (competence), MRPC 1.2 (1996 Kan. Ct. R. Annot. 261) (scope of representation), MRPC 1.3 (1996 Kan. Ct. R. Annot. 264) (diligence), MRPC 1.4 (1996 Kan. Ct. R. Annot. 270) (client communication), MRPC 1.5 (1996 Kan. Ct. R. Annot. 276) (fees), MRPC 1.16 (1996 Kan. Ct. R. Annot. 310) (terminating representation), MRPC 3.1 (1996 Kan. Ct. R. Annot. 318) (meritorious claims), MRPC 3.3 (1996 Kan. Ct. R. Annot. 321) (candor toward the tribunal), and MRPC 8.4 (1996 Kan. Ct. R. Annot. 350) (misconduct).

In considering matters in mitigation and aggravation, the hearing panel found that the respondent had no prior disciplinary record; his conduct demonstrated no dishonest or selfish motive; he returned the fee and arranged for and paid a new attorney to assist the Fields in correcting their credit information; he self-reported his violations and was commended by the Disciplinary Administrator for his level of cooperation; he was inexperienced in the law practice, having been admitted in April 1991, less than 3 years prior

to the violations; and the numerous violations arose out of only one set of facts.

In reaching its decision, the hearing panel reviewed two of our prior disciplinary cases, *In re Pomeroy*, 252 Kan. 1044, 850 P.2d 222 (1993), and *In re Caller*, 258 Kan. 250, 899 P.2d 468 (1995). In regard to these two decisions, the hearing panel said:

"The former case [*Pomeroy*] involved an attorney's action in forging a judge's signature on letters testamentary and presenting same to a bank for withdrawal of estate funds. In that case, the attorney had no reason to believe his action was authorized by his client, he was suffering from extreme depression and had previously received four informal disciplinary admonitions. In *Pomeroy*, the panel recommended suspension from the practice of law for 2 years, followed by 3 years' supervised practice. The Supreme Court instead imposed indefinite suspension.

"In *Caller*, the attorney falsified his client's signature on an affidavit. However, the client had previously signed an earlier version of the affidavit and had verbally authorized the change over the phone. The client failed to meet with the attorney at the scheduled time to sign the affidavit and filing deadlines did not allow for a subsequent meeting. The client later signed an affidavit reaffirming the contents of the affidavit signed by the attorney. The *Caller* panel 'agonized over a recommended disposition.' They found aggravating factors absent. They emphasized that many mitigating factors were present, including no prior disciplinary proceedings, no selfish motive, and extreme remorse. The panel recommended published censure. The Supreme Court accepted the recommendation, stating 'the unique facts herein warrant imposition of a less severe discipline than would normally be imposed for misconduct in these categories.' "

The panel found the respondent's conduct constituted fraud on the court and eroded everyone's right to rely on the integrity of filed pleadings. This concern is shared by members of the court who point out that as officers of the court, attorneys must be expected to abide by the substance and procedure which affect the administration of justice. The ABA Standards For Imposing Lawyer Sanctions § 6.1 (1991) states:

"Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

. . . .

"6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or

potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

Nevertheless, the panel found the respondent's case to be more similar to *Caller* than *Pomeroy* and that in contrast to many situations where too little is done for a client, the respondent went too far in trying to help his client. The panel was especially impressed by the respondent's self-reporting (which may be laudable but was somewhat tardy in its timing) and his full cooperation in the disciplinary process.

The factors considered by the panel were all mitigating in nature. With this background, the panel recommended that the respondent be publicly censured with the requirements that the Fields be made whole along with the foreclosing creditor and action be taken to try to void the bankruptcy filing.

The respondent's explanation for immediate action not being taken once the improper filing became apparent is that he "froze" and could not bring himself to any positive action. This delay is difficult for us to condone and inhibits our ability to give the respondent credit for belatedly taking positive action, rather than immediately, as he should have.

Additionally, we point to the facts of *In re Schmidt*, 246 Kan. 178, 789 P.2d 1201 (1990), which were referred to by the panel in *Caller*, 258 Kan. at 252, as follows:

" 'In *Schmidt*, the respondent voluntarily surrendered her license to practice after having 1) forged a deceased client's signature to his will; 2) forged the signatures of the witnesses to the will; 3) notarized the forged signatures; 4) offered the forged will for probate; 5) transported witnesses to testify in support of the will; and 6) attempted to settle the matter in part to avoid disclosure of the forgeries. The court denied respondent's petition for reinstatement citing the panel's findings that the respondent had committed very serious ethical violations.

'The most significant differences between *Schmidt* and this case are the following:

'1. Ms. Schmidt forged the signature of the decedent and the witnesses and then offered the document for probate. She falsely signed a document purporting to be the will of a decedent, which it was not. The facts set out in the affidavit to which respondent signed his client's name had been verified by the client and were consistent with deposition testimony already before the court.

'2. The effect of Ms. Schmidt's acts, had she been successful, would have been to cause an invalid will to be probated, changing the disposition of the decedent's

assets and damaging other persons. There was really no effect whatsoever caused by the acts of the respondent.

'3. Ms. Schmidt attempted to secure perjured testimony.

'4. Ms. Schmidt not only did not attempt to remedy her misconduct, she tried to cover it up. Respondent took remedial measures within a reasonable time following his delayed realization of the seriousness of what he had done. He testified at trial concerning the conduct and had another attorney complete the case.' "

It is a lame excuse for one's actions to say the conduct was precipitated by the desire to do too much for the client, which might also have been said of Ms. Schmidt's actions that resulted in her disbarment and our refusal of her reinstatement request.

The attorney in *Caller* had the benefit of a consultation with a senior member of his firm while the respondent, a solo practioner, did not seek any immediate advice or assistance. We were also informed at oral argument that the foreclosing creditor was able to conclude its litigation against the Fields without any loss caused by the respondent's actions.

A majority of the court believes, as the hearing panel did, that the facts here are much like those in *Caller* and accepts the panel's findings, conclusions, and recommended discipline. We again, as we said in *Caller*, "conclude that the unique facts herein warrant the imposition of a less severe discipline than would normally be imposed for misconduct in these categories." 258 Kan. at 253.

IT IS THEREFORE ORDERED that Mark Allen Roy be censured in accordance with Supreme Court Rule 203(a)(3) (1996 Kan. Ct. R. Annot. 193) for his violation of the Model Rules of Professional Conduct.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

SIX, J. dissenting: Six months' suspension is the appropriate discipline in this case.

The majority quotes the ABA Standards For Imposing Lawyer Sanctions § 6.12 (1991): "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court."

The majority, in concluding published censure is appropriate, relies on *In re Caller*, 258 Kan. 250, 899 P.2d 468 (1995). I find a factual distinction in the self-reporting timetables for the respondent and Caller. Here lies an important difference: Caller discussed his professional indiscretion (signing his clients' name to an affidavit, placing it on his secretary's desk to notarize, and attaching the affidavit to a brief filed with the court) with the senior members of his firm the evening following his client's examination in court. He spoke with his client, secured her permission to inform the district judge, and did so during the first break at trial the following day. We emphasized the factual situation in *Caller* by noting: "Like the panel, we conclude that the unique facts herein warrant the imposition of a less severe discipline than would normally be imposed for misconduct in these categories." 258 Kan. at 253.

In contrast, the respondent elected to do nothing for 6 weeks. The bankruptcy court dismissed the petition with the forged signatures on its own motion.

The respondent was not communicating with his clients. The clients had decided they would not seek bankruptcy. He forged his clients' signatures on a bankruptcy petition and, without their authority, filed the petition.

The respondent was admitted to the bar in April 1991. He took an admission oath. He, among other things, swore never to "consent to the doing of any falsehood in court." Rule 704 (1996 Kan. Ct. R. Annot. 456).

The respondent owes a primary duty to the court. He assumed this duty before he ever had a client. Our court system depends on members of the bar advancing the truth in submissions to the court. No breach of this professional duty is more detrimental to the administration of justice.

The ramifications of the respondent's actions are: (1) fraud on the court, (2) erosion of the court's right to rely on the integrity of pleadings, (3) delay to a foreclosing creditor caused by the filing of the falsified petition, and (4) a persistent stain on the credit record of the respondent's clients. (At oral argument on January 24, 1997, almost 3 years after the respondent filed the forged petition, we

were informed that the bankruptcy filing remains listed on his clients' credit reports issued by at least one reporting service.)

The irony of the credit stain is that it results from the respondent's failure to communicate with his clients, compounded by his wrongful act of filing. We are not dealing with an intended bankruptcy gone wrong, but with a wrong bankruptcy.

I question the majority's endorsement of the panel's reliance on youth as a factor to temper a fraud on the court of this type. Youth and inexperience have their place in disciplinary proceedings as mitigating factors, but forging a bankruptcy pleading does not call for application of two codes of conduct, one for young lawyers and another for older ones. Three years of law school and 3 years of practice is adequate to season an attorney on the impropriety of filing forged pleadings.