No. 78,045

In the Matter of ERVIN E. GRANT, *Respondent.*

(936 P.2d 1360)

Opinion filed April 18, 1997.

*Stanton A. Hazlett,* chief deputy disciplinary administrator, argued the cause, and *Mark F. Anderson,* disciplinary administrator, was with him on the formal complaint for petitioner.

*Ervin E. Grant,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Ervin E. Grant, an attorney admitted to the practice of law in the State of Kansas whose business address is in El Dorado.

The pertinent facts are not in dispute and were summarized by the hearing panel as follows:

"2. In July 1995, Respondent prepared two (2) wills for Mr. and Mrs. Charles Russell Matthews at the request of their son, David Matthews. Both husband and wife were in a nursing home. Each will included a self-proving affidavit. Respondent gave the wills to David Matthews with written instructions on how they should be executed. Mr. Matthews planned to take the documents to his parents in the nursing home and supervise the execution.

"3. In September Mr. C. R. Matthews died. In October, when Respondent received and reviewed the original executed will of Mr. Matthews, he discovered that it was incorrectly executed and would not be self-proving.

"4. To make the will properly executed and self-proving, Respondent photocopied the witnesses' and testator's signatures and superimposed them on the correct lines of the will and the affidavit. Then he submitted the altered documents to the Sumner County District Court with a probate petition signed by himself stating that the will was genuine and valid and lawfully executed.

"5. The same day the documents were submitted, the Honorable R. Scott McQuin, Judge of the Sumner County District Court, reviewed the petition and will, and wrote a letter to Respondent questioning the validity of the will (Disciplinary Administrator's Exhibit A). Within the week, Respondent admitted to Judge McQuin that he had altered the will."

From these facts the hearing panel concluded:

"Respondent's conduct violates the Kansas Rules of Professional Conduct Sections 3.3(a) (1) [1996 Kan. Ct. R. Annot. 321] [candor toward tribunal] and 8.4(c)

and (d) [1996 Kan. Ct. R. Annot. 350] [engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; engaging in conduct prejudicial to administration of justice]. Clear and convincing evidence supports the Panel's finding that Respondent's petition for probate of the C. R. Matthews will contained a false statement of material fact, i.e. that the will was 'duly executed according to law on the date it bears and is genuine and valid.' To the contrary, Respondent admits that he photocopied and superimposed signatures on the original will because it was not executed correctly. Then he wrongly submitted the altered documents for probate."

In arriving at its recommended disposition, the panel stated:

"[T]he panel has reviewed the ABA Standards for Imposing Lawyer Sanctions. The factors to be considered include the following: 1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; 2) whether the lawyer acted intentionally, knowingly or negligently; 3) the amount of the actual or potential injury caused by the lawyer's misconduct; and 4) the existence of aggravating or mitigating factors.

"The evidence shows that Respondent violated a duty to his client in not supervising the proper execution of the will. He further violated his duty to the legal profession by lying to the court and offering the changed will for probate.

"We must then turn to the ABA Standards on Aggravation and Mitigation to determine whether any factors present either increase or reduce the nature and extent of discipline to be imposed."

Under aggravating factors the panel found: (1) Respondent's actions were dishonest, but not selfish; and (2) he had substantial experience in the practice of law, having practiced since 1951. Under mitigating factors, the panel found: (1) Respondent had no prior disciplinary record; and (2) he had been cooperative during the proceeding, had acknowledged his transgressions, and was remorseful. The panel then stated:

"After reviewing all of these factors, the Panel recommends that Respondent be censured pursuant to Supreme Court Rule 203(a)(3) [1996 Kan. Ct. R. Annot. 193] with the additional recommendation that censure be accomplished through an unpublished opinion. The absence of any other transgressions during his practice as well as Respondent's standing in the community warrant our recommendation that the censure go unpublished."

No exceptions have been filed, and respondent urges us to accept the panel's recommended discipline. The ABA Standards for Imposing Lawyer Sanctions § 6.1 (1991) states:

"Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

. . . .

"6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

Factually, the most analogous disciplinary cases we have had are *In re Schmidt*, 246 Kan. 178, 787 P.2d 1201 (1990); *In re Caller*, 258 Kan. 250, 899 P.2d 468 (1995); and *In re Roy*, 261 Kan. 999, 933 P.2d 662 (1997).

In *Schmidt*, petitioner was seeking reinstatement after her 1983 voluntary surrender of her certificate to practice law. In recommending the petition be denied, the panel found the facts underlying the license surrender to be "that petitioner (1) forged a deceased client's signature to his will, (2) forged the signatures of the witnesses to the will, (3) notarized the forged signatures, (4) offered the forged will for probate, (5) transported witnesses to testify in support of the will, and (6) attempted to settle the matter in part to avoid disclosure of the forgeries." We denied reinstatement.

In *Caller*, the attorney falsified his client's signature on an affidavit. However, the client had previously signed an earlier version of the affidavit and had verbally authorized the change over the telephone. The client failed to meet with the attorney at the scheduled time to sign the affidavit, and filing deadlines did not allow for a subsequent meeting. The client later signed an affidavit reaffirming the contents of the affidavit signed by the attorney. The *Caller* panel "agonized over a recommended disposition." 258 Kan. at 252. It found aggravating factors absent. It emphasized that many mitigating factors were present, including no prior disciplinary proceedings, no selfish motive, and extreme remorse. The panel recommended published censure. The Supreme Court accepted the recommendation, stating "the unique facts herein warrant imposition of a less severe discipline than would normally be imposed for misconduct in these categories." 258 Kan. at 253.

In *Roy*, the attorney was retained by clients who were having creditor problems. The attorney recommended the clients file for bankruptcy. Time passed and a March 17, 1994, sheriff's sale on the clients' residence was imminent. On March 16, 1994, the attorney prepared a bankruptcy petition, forged his clients' signatures thereon, and filed the document. The attorney had no authority to sign or file the petition. Later, the attorney was advised the clients did not want to file for bankruptcy. The attorney did nothing to correct the situation. The petition was ultimately dismissed for failure to proceed. The following year, the clients complained that the bankruptcy was showing up on their credit reports.

The hearing panel in *Roy* likened the case to *Caller*, concluding that the mitigating factors outweighed the aggravating factors and recommended published censure. A majority of the court concluded, as it had in *Caller*, " 'that the unique facts herein warrant the imposition of a less severe discipline than would normally be imposed for misconduct in these categories.' " 261 Kan. at 1003.

Respondent's wrongful conduct is egregious. He had the will of a decedent testator which was improperly executed. By cutting, pasting, and photocopying, he created a document which purported to be a validly executed will. He then prepared and filed a petition seeking probate of the altered will wherein he stated the will was "duly executed according to law on the date it bears and is genuine and valid."

The panel was obviously impressed with respondent's many decades of a discipline-free law practice and his stature as an attorney and civic leader, as shown by the record. It is interesting that the ABA Standards on Aggravation and Mitigation lists substantial experience in the practice of law as an aggravating factor and inexperience in the practice of law as a mitigating factor.

We know of no rule or standard which provides any support for the proposition that a lengthy blemish-free law practice entitles an attorney to one reduced-penalty-bite regardless of severity. As we stated in *Caller* and *Roy*, forging or altering documents and submitting them to a court as valid is serious misconduct which would normally warrant more severe discipline than published censure.

Under the "unique facts" present in those two cases, we accepted the respective panels' recommendations for published censure.

We accept the panel's findings and conclusions. We cannot accept the panel's recommended discipline. The conduct herein is more reprehensible than in either *Caller* or *Roy*. In those cases, the attorney was operating under time constraints which made it impossible to secure the clients' signatures to meet deadlines, and the attorney believed he was doing what the client wanted to expedite a filing rather than forging a legal document which was incapable of being validly executed.

It is the conclusion of the majority of this court that the appropriate discipline is published censure.

IT IS THEREFORE ORDERED that Ervin E. Grant be censured in accordance with Supreme Court Rule 203(a)(3) (1996 Kan. Ct. R. Annot. 193) for his violation of the Model Rules of Professional Conduct.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein be assessed to respondent.

SIX, J., dissenting: Respondent takes no exception to the panel's finding that he violated MRPC 8.4 (c) and (d) (1996 Kan. Ct. R. Annot. 350) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; engaging in conduct prejudicial to the administration of justice).

The majority quotes the ABA Standards For Imposing Lawyer Sanctions § 6.12 (1991): "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court."

Six months' suspension is the appropriate discipline in this case.

In a recent case, *In re Roy*, 261 Kan. 999, 933 P.2d 662 (1997), Roy, 3 years at the bar, forged signatures on a bankruptcy petition. Here, the respondent was admitted to practice in 1951.

Language from *In re Roy* is applicable here:

"The respondent . . . took an admission oath. He, among other things, swore never to 'consent to the doing of any falsehood in court.' Rule 704 (1996 Kan. Ct. R. Annot. 456).

"The respondent owes a primary duty to the court. He assumed this duty before he ever had a client. Our court system depends on members of the bar advancing the truth in submissions to the court. No breach of this professional duty is more detrimental to the administration of justice." 261 Kan. at 1004 (Six, J., dissenting).

The ramifications of respondent's actions are: (1) fraud on the court and (2) erosion of the court's right to rely on the integrity of pleadings. Respondent vouched for the authenticity of the will he altered to the district court by signing a probate petition affirming that the will was genuine, valid, and lawfully executed.

Estate administration must be conducted in an atmosphere where judicial acceptance of counsel's representations as accurate and truthful is routine. Probate practice is generally nonadversarial.

As lawyers and judges, we acknowledge cross-examination as an aid in the search for truth. The attorney standing before the bench in the presence of opposing counsel addresses the court with care. Any misstatement of fact or of the record will be challenged by opposing counsel. However, in the probate setting, opposing counsel is often absent. The truth must be guarded by the integrity of probate counsel.

ABBOTT, J., dissenting: I would suspend respondent from the practice of law for an indefinite period of time. Respondent attempted to perpetrate a fraud on the court by filing a document with the court which he knew to be forged because he forged it. Although not as grievous, respondent also drew a will for two people without meeting with them, entrusted the execution of the wills to a layperson, and did not check to see if the wills had been properly executed until after the deaths of the testators. Respondent's acts merit more than a public reprimand.