No. 89,104

In the Matter of M. STEVEN WAGLE, *Respondent*.

66 P.3d 884

Opinion filed April 18, 2003.

*Franklin D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was on the formal complaint for the petitioner.

*G. Craig Robinson*, of Wichita, argued the cause for the respondent.

*M. Steven Wagle*, respondent, appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against M. Steven Wagle, of Wichita, an attorney admitted to the practice of law in Kansas. After a full and complete hearing before this court, an opinion was filed January 10, 2003, suspending the respondent from the practice of law in the state of Kansas for a period of 1 year from the date of the opinion. *In re Wagle*, 275 Kan. 63, 60 P.3d 920 (2003). In the proceeding before this court, the respondent did not appear. He had filed with the court a request for a continuance on October 21, 2002, which this court denied. However, the court did excuse the presence of the respondent for proceedings before this court. The matter proceeded to a hearing, and this court filed the above-mentioned opinion on January 10, 2003.

On January 30, 2003, the respondent, by and through his attorney, G. Craig Robinson, moved the court for a rehearing or modification and stay of suspension. On the February 6, 2003, the court granted the respondent's motion for rehearing and set his case for March 3, 2003. We advised the respondent that our order for rehearing suspended the effect of the original decision until the matter is decided on a rehearing in accord with Supreme Court Rule 7.06 (2002 Kan. Ct. R. Annot. 51).

The above matter proceeded to a hearing before this court on March 3, 2003. Franklin D. Diehl, Deputy Disciplinary Administrator, appeared and argued on behalf of the Disciplinary Admin-

istrator. The respondent appeared in person and by and through his attorney, G. Craig Robinson, with both the respondent and his counsel addressing this court.

Complaints filed against the respondent alleged that the respondent violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2002 Kan. Ct. R. Annot. 328) (diligence); KRPC 1.4 (2002 Kan. Ct. R. Annot. 340) (communication); KRPC 3.3 (2002 Kan. Ct. R. Annot. 411) (candor toward the tribunal); KRPC 4.1 (2002 Kan. Ct. R. Annot. 426) (truthfulness in statements to others); and KRPC 8.4 (2002 Kan. Ct. R. Annot. 449) (misconduct).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. Based upon clear and convincing evidence, a unanimous panel made the following findings of facts and conclusions of law:

"Findings of Fact

"1. [The Respondent] is an attorney at law . . . .

"Flores Case

"2. On December 3, 1998, Larry and Vickie Flores met with the Respondent regarding their financial situation. Mr. and Mrs. Flores provided the Respondent with background information on their financial difficulties. Mr. and Mrs. Flores had an interest in rental property, business equipment, and a company. The Respondent advised Mr. and Mrs. Flores regarding preparation for a Chapter Seven bankruptcy case.

"3. Also, on December 3, 1998, the Respondent and Mr. and Mrs. Flores agreed that the Respondent's attorney fee for filing a Chapter Seven bankruptcy case would be $500.00. Additionally, the Respondent informed Mr. and Mrs. Flores that they would be required to pay the filing fee of $200.00. At that time, Mr. and Mrs. Flores paid the Respondent $100.00. Mr. and Mrs. Flores understood that the Respondent would not file the bankruptcy case until Mr. and Mrs. Flores paid the balance owing in the amount of $600.00.

"4. During the following sixteen months, Mr. and Mrs. Flores contemplated whether they wanted to file a bankruptcy case. Eventually, Mr. and Mrs. Flores decided to divorce and file for the protection offered by Chapter Seven of the bankruptcy laws. Mr. and Mrs. Flores followed the Respondent's advice and took certain actions with their assets to prepare for bankruptcy.

"5. On April 18, 2000, Mr. and Mrs. Flores wrote to the Respondent, paid the balance of $600.00 owing, and requested that the Respondent prepare the necessary bankruptcy pleadings.

"6. The Respondent's assistant began preparing Mr. and Mrs. Flores' bankruptcy pleadings and schedules. On or about May 2, 2000, the Respondent reviewed a computerized draft of the pleadings and schedules.

"7. Beginning on May 2, 2000, Mr. and Mrs. Flores began calling the Respondent to find out the status of their case. Then, on May 8, 2000, Mrs. Flores sent, via facsimile, information on additional debts to be included in the bankruptcy pleadings and schedules.

"8. Mr. and Mrs. Flores continued calling the Respondent in attempts to learn the status of their case. Many of the telephone calls placed by Mrs. Flores were not returned. The Respondent failed to keep Mr. and Mrs. Flores informed regarding when their bankruptcy case would be filed and whether additional information was necessary to file the bankruptcy case.

"9. On August 25, 2000, Mrs. Flores filed a written complaint with the Office of the Disciplinary Administrator.

"10. John Seeber, an attorney licensed to practice law in the state of Kansas, was assigned to investigate the complaint filed by Mrs. Flores. Mr. Seeber requested and received a copy of the Respondent's file pertaining to Mr. and Mrs. Flores.

"11. The Respondent provided Mr. Seeber with a copy of an unsigned and undated 'Disclosure of Compensation of Attorney for Debtor.' That document indicates that the Respondent had agreed to accept $1,000.00 from Mr. and Mrs. Flores for legal services. Additionally, that document indicates that Mr. and Mrs. Flores had paid the Respondent $500.00 and that Mr. and Mrs. Flores owed the Respondent $500.00.

"12. The Respondent did not have an agreement with Mr. and Mrs. Flores that they would pay him $1,000.00. Rather, the agreement was that Mr. and Mrs. Flores would pay, and in fact did pay, the Respondent $500.00 for legal services and $200.00 for the filing fee.

"13. After Mr. Seeber reviewed the disclosure form in Mr. and Mrs. Flores' case, he went to the bankruptcy court and reviewed the court files in other bankruptcy cases filed by the Respondent. Mr. Seeber discovered that in each of the reviewed bankruptcy cases, the Respondent filed a disclosure alleging that the debtor owed the Respondent a specific amount of money for legal services. Additionally, in most of the cases reviewed by Mr. Seeber, the Respondent took an assignment of the debtor's tax refund to cover the balance due for legal services.

"14. On April 26, 2001, Mr. Seeber interviewed the Respondent. Following the interview, Mr. Seeber memorialized the interview in a letter sent to the Respondent. The Respondent subsequently informed Mr. Seeber that he disagreed that he made the statements that Mr. Seeber attributed to him at the April 26, 2001 interview. Thereafter, Mr. Seeber scheduled a second interview of the Respondent. That interview, while unsworn, was recorded by a court reporter.

"15. During the July 13, 2001, interview, Mr. Seeber asked the Respondent a number of questions regarding the information included on the disclosure forms. The Respondent provided inconsistent and conflicting answers. . . . While the

questions and answers . . . pertained to the Flores case and the Sotelo case, the Respondent confirmed for Mr. Seeber that he engaged in the same practice in all of his cases filed since 1990. Specifically, Mr. Seeber asked about the cases he reviewed.

### "Cases Reviewed by Mr. Seeber

"16. During Mr. Seeber's July 13, 2001, interview of the Respondent, the Respondent detailed his standard procedure in bankruptcy cases. The Respondent stated that he followed his standard procedure in each of the cases reviewed by Mr. Seeber. The Respondent stated that the flat fee covered filing the bankruptcy case and the first meeting with creditors. The Respondent also stated that if legal services were provided to a client, then the Respondent would bill his clients at a rate of $150.00 per hour.

"17. At the hearing on this matter, the Respondent testified that he required his clients to sign a tax refund assignment so that if there was a tax refund and if additional legal services were provided, then the Respondent would receive payment for the additional legal services from the tax refund. However, if a tax refund was realized and no additional fees were incurred, then his client would receive the assigned money.

### "Paul W. Daniels

"18. Paul W. Daniels hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. Daniels agreed to pay, $450.00 for legal services. Mr. Daniels paid the Respondent $450.00. On December 31, 1998, the Respondent filed a bankruptcy case for Mr. Daniels, case number 98-15607. Mr. Daniels had some assets and a bankruptcy trustee administered the case.

"19. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $850.00 for legal services. Additionally, the disclosure indicated that Mr. Daniels had paid the Respondent $450.00 and that Mr. Daniels owed the Respondent $400.00 for legal services. However, at the time the Respondent filed the disclosure, Mr. Daniels had paid the Respondent the agreed fee and did not owe the Respondent $400.00 for legal services.

"20. The Respondent prepared, and Mr. Daniels executed, an income tax assignment.

"21. Mr. Daniels realized an income tax refund and a portion of Mr. Daniels' income tax refund was withheld from the bankruptcy estate pursuant to the Respondent's assignment. However, the Respondent had not performed any additional legal services for Mr. Daniels. The Respondent failed to notify the bankruptcy court and trustee that he had no valid claim for funds pursuant to the tax refund assignment. As a result of the Respondent's misrepresentation on the disclosure, Mr. Daniels' bankruptcy estate suffered an actual loss. To date, neither the Respondent nor Mr. Daniels has repaid the bankruptcy estate.

### "Larry A. and Carol L. Murphy

"22. Larry A. and Carol L. Murphy hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Larry Murphy agreed to pay, $450.00 for legal services. Mr. and Mrs. Larry Murphy paid the Respondent $450.00. On May 17, 1999, the Respondent filed a bankruptcy case for Mr. and Mrs. Larry Murphy, case number 99-11780.

"23. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $900.00 for legal services. Additionally, the disclosure indicated that Mr. and Mrs. Larry Murphy had paid the Respondent $450.00 and that Mr. and Mrs. Larry Murphy owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Larry Murphy's 1999 income tax refund. However, at the time the Respondent filed the disclosure, Mr. and Mrs. Larry Murphy had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"24. The Respondent prepared, and Mr. and Mrs. Larry Murphy executed, an income tax assignment.

"25. It is unclear from the record whether Mr. and Mrs. Larry Murphy's bankruptcy case was administered by a bankruptcy trustee and whether Mr. and Mrs. Larry Murphy received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. and Mrs. Larry Murphy and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Jose G. and Julia E. Sotelo

"26. Jose G. and Julia E. Sotelo hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Sotelo agreed to pay, $450.00 for legal services. Mr. and Mrs. Sotelo paid the Respondent $450.00. On December 2, 1999, the Respondent filed a bankruptcy case for Mr. and Mrs. Sotelo, case number 99-14542. Mr. and Mrs. Sotelo had some assets and Mary E. May, a bankruptcy trustee, administered the case.

"27. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $900.00 for legal services. Additionally, the disclosure indicated that Mr. and Mrs. Sotelo had paid the Respondent $450.00 and that Mr. and Mrs. Sotelo owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Sotelo's 1999 income tax refund. However, at the time the Respondent filed the disclosure, Mr. and Mrs. Sotelo had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"28. The Respondent prepared, and Mr. and Mrs. Sotelo executed, an income tax assignment.

"29. Mr. and Mrs. Sotelo realized an income tax refund and a portion of Mr. and Mrs. Sotelo's income tax refund was withheld from the bankruptcy estate pursuant to the Respondent's assignment. However, the Respondent had not performed any additional legal services for Mr. and Mrs. Sotelo. The Respondent failed to notify the bankruptcy court and trustee that he had no valid claim for funds pursuant to the tax refund assignment. As a result of the Respondent's misrepresentation on the disclosure, Mr. and Mrs. Sotelo's bankruptcy estate suffered an actual loss. After Ms. May learned that the Mr. and Mrs. Sotelo did not owe the Respondent any attorney fees, Ms. May asked that the Respondent forward the monies, withheld pursuant to the assignment, to the estate. The Respondent complied with Ms. May's request.

## "Thomas B. and Kimberly R. Murphy

"30. Thomas B. and Kimberly R. Murphy hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Thomas Murphy agreed to [pay $900.00 for legal services]. On February 11, 2000, the Respondent filed a bankruptcy case for Mr. and Mrs. Thomas Murphy, case number 00-10389.

"31. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $900.00 for legal services. Additionally, the disclosure indicated that Mr. and Mrs. Thomas Murphy had paid the Respondent $450.00 and that Mr. and Mrs. Thomas Murphy owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Thomas Murphy's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Mr. and Mrs. Thomas Murphy had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"32. The Respondent prepared, and Mr. and Mrs. Thomas Murphy executed, an income tax assignment.

"33. While Mr. and Mrs. Thomas Murphy did not owe the Respondent any money for legal services at the time the disclosure was filed, later Mr. and Mrs. Thomas Murphy did incur additional attorney fees. To this day, Mr. and Mrs. Thomas Murphy owe the Respondent for additional legal services.

## "Robert E. Ulriksen

"34. Robert E. Ulriksen hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. Ulriksen agreed to pay, $450.00 for legal services. Mr. Ulriksen paid the Respondent $450.00. On March 7, 2000, the Respondent filed a bankruptcy case for Mr. Ulriksen, case number 00-10713.

"35. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $900.00 for legal services. Additionally, the disclosure indicated that Mr. Ulriksen had paid the Respondent $450.00 and that Mr. Ulriksen owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the

balance due from Mr. Ulriksen's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Mr. Ulriksen had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"36. The Respondent prepared, and Mr. Ulriksen executed, an income tax assignment.

"37. It is unclear from the record whether Mr. Ulriksen's bankruptcy case was administered by a bankruptcy trustee and whether Mr. Ulriksen received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. Ulriksen and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Patricia B. Cameron

"38. Patricia B. Cameron hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Ms. Cameron agreed to pay, $450.00 for legal services. Ms. Cameron paid the Respondent $450.00. On April 19, 2000, the Respondent filed a bankruptcy case for Ms. Cameron, case number 00-11417.

"39. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $900.00 for legal services. Additionally, the disclosure indicated that Ms. Cameron had paid the Respondent $450.00 and that Ms. Cameron owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Ms. Cameron's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Ms. Cameron had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"40. It is unclear from the record whether Ms. Cameron's bankruptcy case was administered by a bankruptcy trustee and whether Ms. Cameron executed an income tax assignment to the Respondent. However, the Respondent did not perform any additional legal services for Ms. Cameron and the Respondent did not notify the bankruptcy court that the disclosure contained a misrepresentation.

### "Thomas E. McKinney

"41. Thomas E. McKinney hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. McKinney agreed to pay, $500.00 for legal services. Mr. McKinney paid the Respondent $500.00. On May 12, 2000, the Respondent filed a bankruptcy case for Mr. McKinney, case number 00-11774.

"42. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $1,000.00 for legal services. Additionally, the disclosure indicated that Mr. McKinney had paid the Respondent $500.00 and that Mr. McKinney owed the Respondent $500.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. McKinney's 2000 income tax refund. However, at the time

the Respondent filed the disclosure, Mr. McKinney had paid the Respondent the agreed fee and did not owe the Respondent $500.00 for legal services.

"43. The Respondent prepared, and Mr. McKinney executed, an income tax assignment.

"44. It is unclear from the record whether Mr. McKinney's bankruptcy case was administered by a bankruptcy trustee and whether Mr. McKinney received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. McKinney and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Carleen L. Miller

"45. Carleen L. Miller hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Ms. Miller agreed to pay, $500.00 for legal services. Ms. Miller paid the Respondent $500.00. On May 12, 2000, the Respondent filed a bankruptcy case for Ms. Miller, case number 00-11784.

"46. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $950.00 for legal services. Additionally, the disclosure indicated that Ms. Miller had paid the Respondent $500.00 and that Ms. Miller owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Ms. Miller's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Ms. Miller had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"47. The Respondent prepared, and Ms. Miller executed, an income tax assignment.

"48. It is unclear from the record whether Ms. Miller's bankruptcy case was administered by a bankruptcy trustee and whether Ms. Miller received an income tax refund. However, the Respondent did not perform any additional legal services for Ms. Miller and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Dennis E. and Lynn R. Dodson

"49. Dennis E. and Lynn R. Dodson hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Dodson agreed to pay, $450.00 for legal services. Mr. and Mrs. Dodson paid the Respondent $450.00. On May 15, 2000, the Respondent filed a bankruptcy case for Mr. and Mrs. Dodson, case number 00-11817.

"50. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $900.00 for legal services. Additionally, the disclosure indicated that Mr. and Mrs. Dodson had paid the Respondent $450.00 and that Mr. and Mrs. Dodson owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Dodson's 2000 income tax refund.

However, at the time the Respondent filed the disclosure, Mr. and Mrs. Dodson had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"51. The Respondent prepared, and Mr. and Mrs. Dodson executed, an income tax assignment.

"52. It is unclear from the record whether Mr. and Mrs. Dodson's bankruptcy case was administered by a bankruptcy trustee and whether Mr. and Mrs. Dodson received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. and Mrs. Dodson and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Arthur L. and Sue A. Jaske

"53. Arthur L. and Sue A. Jaske hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Jaske agreed to pay, $500.00 for legal services. Mr. and Mrs. Jaske paid the Respondent $500.00. On May 15, 2000, the Respondent filed a bankruptcy case for Mr. and Mrs. Jaske, case number 00-11818.

"54. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $1,000.00 for legal services. Additionally, the disclosure indicated that Mr. and Mrs. Jaske had paid the Respondent $500.00 and that Mr. and Mrs. Jaske owed the Respondent $500.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Jaske's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Mr. and Mrs. Jaske had paid the Respondent the agreed fee and did not owe the Respondent $500.00 for legal services.

"55. The Respondent prepared, and Mr. and Mrs. Jaske executed, an income tax assignment.

"56. It is unclear from the record whether Mr. and Mrs. Jaske's bankruptcy case was administered by a bankruptcy trustee and whether Mr. and Mrs. Jaske received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. and Mrs. Jaske and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Nina M. Hall

"57. Nina M. Hall hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Ms. Hall agreed to pay, $500.00 for legal services. Ms. Hall paid the Respondent $500.00. On May 19, 2000, the Respondent filed a bankruptcy case for Ms. Hall, case number 00-11877.

"58. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $1,000.00 for legal services. Additionally, the disclosure indicated that Ms. Hall had paid the Respondent $500.00 and that Ms. Hall owed the Respondent $500.00 for legal serv-

ices. The disclosure indicated that the Respondent planned to obtain the balance due from Ms. Hall's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Ms. Hall had paid the Respondent the agreed fee and did not owe the Respondent $500.00 for legal services.

"59. The Respondent prepared, and Ms. Hall executed, an income tax assignment.

"60. It is unclear from the record whether Ms. Hall's bankruptcy case was administered by a bankruptcy trustee and whether Ms. Hall received an income tax refund. However, the Respondent did not perform any additional legal services for Ms. Hall and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Jason D. and Caroline V. Klotz

"61. Jason D. and Caroline V. Klotz hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Klotz agreed to pay, $500.00 for legal services. Mr. and Mrs. Klotz paid the Respondent $500.00. On May 24, 2000, the Respondent filed a bankruptcy case for Mr. and Mrs. Klotz, case number 00-11955.

"62. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $1,000.00 for legal services. Additionally, the disclosure indicated that Mr. and Mrs. Klotz had paid the Respondent $500.00 and that Mr. and Mrs. Klotz owed the Respondent $500.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Klotz's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Mr. and Mrs. Klotz had paid the Respondent the agreed fee and did not owe the Respondent $500.00 for legal services.

"63. The Respondent prepared, and Mr. and Mrs. Klotz executed, an income tax assignment.

"64. It is unclear from the record whether Mr. and Mrs. Klotz's bankruptcy case was administered by a bankruptcy trustee and whether Mr. and Mrs. Klotz received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. and Mrs. Klotz and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

### "Larry L. and Audrey L. Ford

"65. Larry L. and Audrey L. Ford hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Mr. and Mrs. Ford agreed to pay, $500.00 for legal services. Mr. and Mrs. Ford paid the Respondent $500.00. On June 2, 2000, the Respondent filed a bankruptcy case for Mr. and Mrs. Ford, case number 00-12074.

"66. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $1,000.00 for legal

services. Additionally, the disclosure indicated that Mr. and Mrs. Ford had paid the Respondent $500.00 and that Mr. and Mrs. Ford owed the Respondent $500.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Mr. and Mrs. Ford's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Mr. and Mrs. Ford had paid the Respondent the agreed fee and did not owe the Respondent $500.00 for legal services.

"67. The Respondent prepared, and Mr. and Mrs. Ford executed, an income tax assignment.

"68. It is unclear from the record whether Mr. and Mrs. Ford's bankruptcy case was administered by a bankruptcy trustee and whether Mr. and Mrs. Ford received an income tax refund. However, the Respondent did not perform any additional legal services for Mr. and Mrs. Ford and the Respondent did not notify the bankruptcy court that he had no valid claim for funds pursuant to the tax refund assignment and that the disclosure contained a misrepresentation.

"Barbara A. Banning

"69. Barbara A. Banning hired the Respondent to file a Chapter Seven bankruptcy case. The Respondent agreed to accept, and Ms. Banning agreed to pay, $500.00 for legal services. Ms. Banning paid the Respondent $500.00. On October 13, 2000, the Respondent filed a bankruptcy case for Ms. Banning, case number 00-14057. Ms. Banning had some assets and a bankruptcy trustee administered the case.

"70. The Respondent filed a 'Disclosure of Compensation of Attorney for Debtor,' which indicated that the Respondent agreed to accept $950.00 for legal services. Additionally, the disclosure indicated that Ms. Banning had paid the Respondent $500.00 and that Ms. Banning owed the Respondent $450.00 for legal services. The disclosure indicated that the Respondent planned to obtain the balance due from Ms. Banning's 2000 income tax refund. However, at the time the Respondent filed the disclosure, Ms. Banning had paid the Respondent the agreed fee and did not owe the Respondent $450.00 for legal services.

"71. The Respondent prepared, and Ms. Banning executed, an income tax assignment.

"72. Ms. Banning realized an income tax refund, and a portion of Ms. Banning's income tax refund was withheld from the bankruptcy estate pursuant to the Respondent's assignment. However, the Respondent had not performed any additional legal services for Ms. Banning. The Respondent failed to notify the bankruptcy court and trustee that he had no valid claim for funds pursuant to the tax refund assignment. As a result of the Respondent's misrepresentation on the disclosure, Ms. Banning's bankruptcy estate suffered an actual loss. To date, neither the Respondent nor Ms. Banning has repaid the bankruptcy estate.

## "CONCLUSIONS OF LAW

"1. Based upon the above findings of fact, the Hearing Panel concludes, as a matter of law, that the Respondent violated KRPC 1.4, KRPC 3.3, KRPC 8.4(c), and KRPC 8.4(d).

"2. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' The Respondent failed to keep Mr. and Mrs. Flores informed regarding the status of their case. Additionally, the Respondent failed to return a number of telephone calls to Mrs. Flores. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"3. 'A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' KRPC 3.3(a). In this case, the Respondent knowingly made a false statement of material fact to the bankruptcy court every time he filed a 'Disclosure of Compensation of Attorney for Debtor,' alleging that the debtor owed the Respondent for legal services. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a).

"4. KRPC 8.4 provides, in pertinent part, as follows:
'It is professional misconduct for a lawyer to:
. . . .
'(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
'(d) engage in conduct that is prejudicial to the administration of justice;
. . . .

"The Respondent violated KRPC 8.4(c) and KRPC 8.4(d), as detailed below:

"a. When the Respondent filed the 'Disclosure of Compensation of Attorney for Debtor,' in the fourteen cases detailed in the Findings of Fact, above, the Respondent provided false and misleading information to the bankruptcy court. In each of those cases, at the time he filed the disclosure, there was no balance due for legal services. Because the Respondent provided false and misleading information, the Hearing Panel concludes that the Respondent 'engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation,' in violation of KRPC 8.4(c).

"b. The Respondent engaged in conduct that was 'prejudicial to the administration of justice,' when the Respondent filed false and misleading disclosures in fourteen bankruptcy cases. In the Banning case, Daniels case, and Sotelo case, the bankruptcy estate should have received money that was diverted to the Respondent's clients. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"5. The Disciplinary Administrator also alleged that the Respondent violated KRPC 1.3, KRPC 4.1, KRPC 8.4(a), KRPC 8.4(b), and KRPC 8.4(g). However, the Hearing Panel concludes that the Disciplinary Administrator failed to present clear and convincing evidence that the Respondent violated KRPC 1.3, KRPC 4.1, KRPC 8.4(a), KRPC 8.4(b), and KRPC 8.4(g).

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duties Violated*. The Respondent violated his duty to provide reasonable communication and his duty to the profession to maintain personal integrity.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a direct result of the Respondent's misconduct, monies were improperly withheld from bankruptcy estates.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. The Respondent engaged in a pattern of misconduct when he filed false and misleading disclosures in fourteen bankruptcy cases. Ms. May and Edward Nazar, bankruptcy trustees provided evidence in this case. In the stipulation regarding Ms. May's testimony and in Mr. Nazar's testimony, the bankruptcy trustees identified that the pattern or practice that the Respondent engaged in amounted to misrepresentations to the court.

"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. The Respondent, when interviewed by Mr. Seeber, disciplinary investigator, was evasive and provided inconsistent and conflicting explanations for his behavior.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1986. At the time the reported misconduct began, the Respondent had been practicing law for thirteen years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Previous Good Character and Reputation in the Community Including Any Letters From Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent enjoys a good reputation in his community as evidenced by the many letters submitted by his peers and clients.

"Remorse. The Respondent testified that if the Hearing Panel found him in violation of any disciplinary rules, then he was sorry.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 6.12 and 6.13. Standard 6.12 provides:

'Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

"Standard 6.13 provides:

'Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.' "

Upon rehearing, the respondent filed his motion for rehearing or modification and stay of suspension. All matters contained in the respondent's record have been considered by this court. In addition, on February 7, 2003, the respondent asked that a letter dated February 4, 2003, from Susan Wagle be added to the record. That letter has been added to the record and the matters therein have been considered by this court. On February 24, 2003, the respondent asked that a proposed probation plan, together with a supervision letter from William H. Zimmerman, Jr., attorney at law, be added to the record. The probation plan submitted, together with the letter from William H. Zimmerman, Jr., to the respondent's attorney, G. Craig Robinson, dated February 21, 2003, has also been admitted to the record. The information contained in those documents has been considered by the court.

The respondent and his counsel have also addressed the court on the matters contained in the record. The respondent respectfully asked the court to consider adopting the recommendations for public censure of the respondent in the final hearing report of the disciplinary panel.

The court notes that the respondent has taken no exceptions to the panel's final report that he violated KRPC 8.4(c) and (d) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; engaging in conduct prejudicial to the administration of justice). In addition to other matters presented, the respondent attempted to explain his violations by his failure to keep up with changes that occurred in bankruptcy practice. However, this court

found nothing presented by counsel for the respondent or the respondent which detracts from the finding that he violated KRPC 8.4(c) and (d). The respondent's failure to take exceptions to these findings and the entire record before us established by clear and convincing evidence that such violations occurred.

The ABA Standards For Imposing Lawyer Sanctions § 6.12 (1991) says: "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court . . . ."

At the hearing before the disciplinary panel, as well as the rehearing before this court, the Disciplinary Administrator recommended a 1-year suspension. The hearing panel recommended that the respondent be censured by the Kansas Supreme Court pursuant to Supreme Court Rule 203(a)(3) (2002 Kan. Ct. R. Annot. 224). Our scope of review in disciplinary matters is set forth in *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1988):

"Our standard of review of disciplinary matters was recently set forth in *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993), where we stated:

'In *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a "duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered." In *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board "is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony." See *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987).' "

"We apply the rules stated above in considering the evidence, the findings of the panel, and the arguments of the parties in making our determination of whether or not violations of the MRPC [KRPC] exist, and, if they do, deciding upon the appropriate discipline to be imposed."

We conclude that the above findings and conclusions by the hearing panel are supported by clear and convincing evidence, and we adopt the findings and conclusions of the hearing panel. However, we believe in this case that the language of *In re Roy*, 261 Kan. 999, 933 P.2d 662, (1997), applies upon our rehearing:

"The respondent . . . took an admission oath. He, among other things, swore never to 'consent to the doing of any falsehood in court.' Rule 704 [(2002 Kan. Ct. R. Annot. 556)]."

"The respondent owes a primary duty to the court. He assumed this duty before he ever had a client. Our court system depends on members of the bar advancing the truth in submissions to the court. No breach of this professional duty is more detrimental to the administration of justice." 261 Kan. at 1004 (Six, J., dissenting).

See *In re Grant*, 262 Kan. 269, 273-74, 936 P.2d 1360 (1997) (Abbott, J., dissenting).

Our discussion in our original decision has equal force in our decision upon the rehearing:

"The panel found with reference to the Paul W. Daniels case: 'As a result of the Respondent's misrepresentation on the disclosure, Mr. Daniels' bankruptcy estate suffered an actual loss. To date, neither the Respondent nor Mr. Daniels has repaid the bankruptcy estate.' A similar finding and observation is made with reference to the Barbara A. Banning case: 'As a result of the Respondent's misrepresentation on the disclosure, Ms. Banning's bankruptcy estate suffered an actual loss. To date, neither the Respondent nor Ms. Banning has repaid the bankruptcy estate.'

"As to the Flores case, the Disciplinary Administrator recommended that restitution in the sum of $500 be required. We agree. Vickie Flores testified before the hearing panel that she paid respondent $700 to handle her and her husband's bankruptcy ($200 filing fee and $500 for services). As a result of respondent's dilatory approach to the Flores matter, Flores terminated the relationship and hired another attorney at a cost of $750 ($250 filing fee and $500 for services) to get the bankruptcy filed. Respondent's submission to the hearing panel indicates conclusively that he refunded $194 to Flores. Thus, restitution in the amount of $500 to Ms. Flores is appropriate.

"As was said in *In re Grant*: 'The ramifications of respondent's actions are: (1) fraud on the court and (2) erosion of the court's right to rely on the integrity of pleadings.' 262 Kan. at 274 (Six, J., dissenting)." *In re Wagle*, 275 Kan. at 76-77.

A majority of this court disagrees with the recommendations of the hearing panel. Based upon the entire record, the majority of this court concludes that a 1-year suspension from the practice of law in this state is an appropriate discipline for the respondent.

IT IS THEREFORE ORDERED that M. Steven Wagle is hereby suspended from the practice of law in the state of Kansas for a period of 1 year from the date of this opinion.

IT IS FURTHER ORDERED that the respondent pay restitution in the amount of $500 to Vickie Flores. Payment of the $500 is to be

submitted to the Disciplinary Administrator's office to be forwarded to Vickie Flores.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218(a) (2002 Kan. Ct. R. Annot. 279), and, at the end of the 1-year suspension, the respondent will be reinstated upon furnishing proof of (1) compliance with Rule 218(a) and (2) restitution to the Clerk of the Appellate Courts.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs be assessed against the respondent in the amount certified by the office of the Disciplinary Administrator.

ABBOTT, J., not participating.

LARSON, S.J., assigned.