IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 129,013

In the Matter of M. STEVEN WAGLE,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held September 11, 2025. Opinion filed November 14, 2025. Published censure.

*Alice L. Walker*, Deputy Disciplinary Administrator, argued the cause and was on the formal complaint for petitioner.

*Jerry D. Bogle*, of Young, Bogle, Wells & Blanchard, P.A., of Wichita, argued the cause, and *M. Steven Wagle*, respondent, argued the cause pro se.

PER CURIAM: This is an attorney discipline proceeding against M. Steven Wagle, of Wichita. Wagle received his license to practice law in Kansas in September 1986.

On July 24, 2024, the Disciplinary Administrator's office filed a formal complaint against Wagle alleging violation of the Kansas Rules of Professional Conduct (KRPC) 1.7 (conflict of interest: current clients) (2025 Kan. S. Ct. R. at 335). Respondent answered the formal complaint on August 28, 2024. On January 20, 2025, respondent entered into a joint agreement with the Disciplinary Administrator's office stipulating to violation of KRPC 1.7. The respondent entered into a joint stipulation of respondent's prior informal admonitions on January 22, 2025.

Respondent personally appeared and was represented by counsel at the complaint hearing before a panel of the Kansas Board for Discipline of Attorneys, which was

conducted on January 22, 2025. After the hearing, the panel determined that respondent had violated KRPC 1.7. The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

. . . .

"18.   Respondent is a criminal defense attorney in Sedgwick County, Kansas.

"19.   In 2020, respondent was appointed to represent B.A. in several matters in Sedgwick County District Court: Case Nos. 2020-CR-494, 2020-CR-704, and 2020-CR-1150.

"20.   The original case, 2020-CR-494, was a felony case charging B.A. with various sex crimes against a minor victim. The State filed the complaint on February 18, 2020. As part of this case, B.A. was ordered to have no contact with the minor victim and the minor victim's mother, H.G. B.A. was also ordered to have no contact with the complainant in the present disciplinary matter, J.O.

"21.   Respondent was appointed to represent B.A. in this matter on March 16, 2020.

"22.   Case No. 2020-CR-704, was filed March 3, 2020. B.A. was charged with violating the protective order issued in 2020-CR-494 by contacting H.G. One of the witnesses listed on the complaint is 'JMO', the complainant in this case, J.O.

"23.   Respondent was appointed to represent B.A. in this matter on March 13, 2020.

2

"24.	J.O. was B.A.'s girlfriend. She was charged on May 6, 2020, in an identity theft case, Case No. 2020-CR-1095. This case arose out of her efforts to assist B.A. in violating the no contact order—J.O. contacted Cricket Wireless, posed as H.G., and changed information and phone numbers on the account in order to enable B.A. in contacting H.G. This is the same underlying sequence of events that resulted in B.A.'s case, 2020-CR-704.

"25.	J.O. was ordered to have no contact with any State witnesses in this case; B.A. was a State witness.

"26.	Respondent entered his appearance on behalf of J.O. in this matter on July 7, 2020.

"27.	B.A. was charged in Case No. 2020-CR-1150 on May 18, 2020, with violating the no contact order with J.O. from Case No. 2020-CR-494. (The panel observes the complaint shows the no contact order violated was from case '20CR394' but this appears to be a typographical error and the correct case number should have been 2020-CR-494).

"28.	Respondent was appointed to represent B.A. in this matter on May 18, 2020.

"29.	B.A. was charged on July 8, 2020, with a subsequent violation of the no contact order with J.O. in Case No. 2020-CR-1401.

"30.	Respondent was not appointed to this matter. Chrystal L. Krier was appointed to represent B.A. on July 13, 2020.

"31.	J.O. was charged on July 7, 2020, with violating the no contact order with B.A., in Case No. 2020-CR-1403.

"32.	Respondent did not represent J.O. in this case; James Eicher was appointed.

3

"33. At the time J.O. hired respondent in July 2020, respondent already represented B.A. in 2020-CR-494 and 2020-CR-1150. In both cases B.A. was either ordered to have no contact with J.O. or was charged with violating the no contact order.

"34. Respondent was aware that his representation of both B.A. and J.O. could be a conflict of interest. Respondent obtained written waivers from both B.A. and J.O.

"35. Through the disciplinary investigation, respondent provided a copy of a waiver executed by B.A. on June 9, 2020. The waiver is a one-page document containing a two-paragraph letter to the client followed by a one-paragraph waiver at the bottom of the page. The waiver has case number 2020-CR-1150 typed in the heading of the wa[i]ver, as well as in the body of the letter. The mark in the body of the letter was inadvertent and not meant to cross out 2020-CR-1150. The waiver further has case number 2020-CR-704 handwritten in the heading and in the body of the letter. Additionally, the waiver section of the document lists the name J.N., which is crossed out and B.A.'s name is handwritten above.

"36. This document did not list Case Nos. 2020-CR-494 or 2020-CR-1401.

"37. The language of the waiver stated:

'I [B.A.] having discussed all my potential conflicts with his representation of my girl friend [*sic*], [J.O.] in an identity theft case in which I am a co-defendant or potential witness, hereby waive all conflicts with Mr. Wagle's representation of my girl friend [*sic*] either past or future in the present case.'

"38. During the disciplinary investigation, respondent produced a waiver from J.O. dated July 2, 2020. This waiver was also a one-page document with a two-paragraph letter followed by a one-paragraph waiver.

"39. The waiver stated:

'I [J.O.] having discussed all my potential conflicts with Mr. Wagle's prior representation of my boyfriend, [B.A.] in an identity theft case in which I

4

am a co-defendant or potential witness, hereby waive all conflicts with Mr. Wagle's prior representation of my boyfriend either past or future in the above mentioned case.'

"40.  In his attorney response, respondent said:

'[J.O.] sought me out, not the other way around. [J.O.], after I told her of the conflict, said she would sign any release. I broke off communication with [J.O.] and spoke with her boyfriend. He informed me he wanted me to represent her on this case and not him. He authorized me to withdraw from his case. I had him sign a release and waiver. [J.O.] then re-contacted me. I then had her sign a release and waiver.'

"41.  This waiver only specifically mentioned the potential conflict between J.O.'s case, 2020-CR-1095, and B.A.'s case 2020-CR-704. It did not mention 2020-CR-494, 2020-CR-1150, 2020-CR-1401, or 2020-CR-1403.

"42.  On July 30, 2020, Chief District Attorney Alice Osburn emailed respondent and Eicher a global plea offer to resolve 2020-CR-1095 and 2020-CR-1403. The offer required J.O. to testify against B.A.

"43.  Osburn pointed out this may cause respondent to have a conflict of interest.

"44.  Several emails followed between respondent, Eicher, Osburn, and court staff, attempting to coordinate hearing dates. Respondent failed to appear at a hearing on October 7, 2020, but the hearing was rescheduled for November 2, 2020, without a bench warrant being issued. Respondent explained at the formal hearing that due to complications and backlogs caused by the COVID-19 pandemic, sometimes the district court scheduled hearings without checking parties' availability.

"45.  At the November 2, 2020 hearing, respondent made an oral motion to withdraw from representing J.O. due to a conflict of interest. Eicher was appointed to represent J.O. J.O. received the same plea offer that she had originally received on July 30, 2020.

5

"46.  At the formal hearing, respondent again conceded to the violation and said he should not have represented J.O. and that he has since changed his practice. Upon questioning from the panel for specifics, he said if he was again approached by the significant other of a person he already represented who also wanted him to represent them, 'I would just walk them out the door. Probably wouldn't even talk to them.'

"47.  Respondent cooperated throughout the disciplinary investigation.

"*Conclusions of Law*

"48.  The parties stipulated to the violation of KRPC 1.7. Based on the findings of fact and the parties' stipulation, the hearing panel concludes as a matter of law that respondent violated KRPC 1.7 (conflict of interest).

"KRPC 1.7

"49.  KRPC 1.7 provides:

'(a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

'(1)  the representation of one client will be directly adverse to another client; or

'(2)  there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

'(b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

'(1)  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

6

'(2)   the representation is not prohibited by law;

'(3)   the representation does not involve the assertion of a claim by one client against another client represented in the same litigation or other proceeding before a tribunal; and

'(4)   each affected client gives informed consent, confirmed in writing. (2025 Kan. S. Ct. R. at 335).'

"50.   Respondent represented J.O. and B.A. in multiple intertwined cases. In many of these cases, J.O. was designated as a witness for the State against B.A., and vice versa. To wit:

"51.   Respondent represented B.A. in Case No. 2020-CR-494. B.A.'s violations of the order prohibiting contact with J.O. in this case gave rise to additional criminal charges against B.A. in Case Nos. 2020-CR-704, 2020-CR-1150, and 2020-CR-1401. J.O. is listed as a State witness in 2020-CR-704 and 2020-CR-1150, and is listed as a codefendant in 2020-CR-1401. Concurrently, respondent represented J.O. in Case No. 2020-CR-1095, which arose out of her efforts to assist B.A. in violating the no contact order in Case No. 2020-CR-494, and in which B.A. was listed as a witness on the State's complaint. This case gave rise to subsequent charges of violations of no contact orders with B.A. in Case No. 2020-CR-1403, and the plea offer to resolve this matter required J.O. to agree to testify against B.A.

"52.   Respondent's representation of J.O. was directly and materially adverse to B.A., and vice versa. See KRPC 1.7, Comment [6] ('[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.'); Comment [8] ('Even when there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests.')

7

"53.   The waivers respondent obtained from his clients were insufficient to address the conflicts of interest in these matters. The hearing panel questions whether any waiver could be sufficient in these matters, but at any rate, the waivers in this case were broad and non-specific and did not serve to inform his clients of the specific risks involved. To wit:

"54.   The waiver from B.A. did not list every case in which a conflict existed with J.O.; rather, it only listed 2020-CR-704 and 2020-CR-1150. Moreover, the waiver was vague and did not describe the material and reasonably foreseeable ways that the conflict could have adverse effects on B.A.'s interests. Specifically, it did not inform B.A. that J.O. could be required to testify against him, as indeed turned out to be the case. See KRPC 1.7, Comment [17] ('[i]nformed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client.')

"55.   The waiver from J.O. suffered from a similar lack of specificity. Moreover, the waiver only listed conflicts arising from respondent's representation of J.O. in Case No. 2020-CR-1095 and B.A.'s Case No. 2020-CR-704 and did not list the other cases in which conflicts existed.

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"56.   In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"57.   *Duty Violated*. Respondent violated his duty to provide conflict-free representation to J.O. and B.A.

"58.   *Mental State*. Respondent violated his duty knowingly. Respondent recognized a conflict of interest existed and attempted to obtain a waiver from each client, thus respondent knew he was violating his duty to provide conflict-free resolution.

8

"59. *Injury*. J.O. was able to get the same plea bargain from the State after obtaining new counsel; thus, the injury to J.O. as a result of respondent's misconduct was potential injury and not actual injury.

"Aggravating and Mitigating Factors

"60. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. Rule 226(a)(1)(C)(i) (2025 Kan. S. Ct. R. at 275). In reaching its recommendation for discipline, the hearing panel considered the aggravating factors described in Standard 9.22 and found the following aggravating factors:

"61. *Prior disciplinary offenses*. The disciplinary administrator and respondent stipulated that respondent has received three prior informal admonitions. The admonitions are remote in time and in nature to the present matter. In DA 8331, respondent was admonished in 2002 for violating KRPC 7.5 (firm names and letterheads). In DA 8746, respondent was admonished in 2003 for violating KRPC 1.3 (diligence). In DA 11,697, respondent was admonished in 2014 for violating KRPC 8.4(d) (conduct prejudicial to the administration of justice).

"62. In 2003 the Kansas Supreme Court suspended respondent's license to practice law for one year for violating KRPC 8.4(c) and 8.4(d) (conduct involving dishonesty, fraud, deceit or misrepresentation, and conduct prejudicial to the administration of justice). *In re Wagle*, 275 Kan. 63, 60 P.3d 920 (2003).

"63. These are considered a part of respondent's reportable disciplinary history. Rule 225(b) (2025 Kan. S. Ct. R. at 274).

"64. *Substantial experience in the practice of law*. Respondent has been licensed to practice law in Kansas since 1986. Respondent has substantial experience in the practice of law.

9

"65.  Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances present:

"66.  *Absence of a dishonest or selfish motive*. At the formal hearing the disciplinary administrator conceded, and the hearing panel finds, that respondent's actions were not motivated by a dishonest or selfish motive. Respondent attempted to mitigate the conflict via waiver, but the waiver was insufficient.

"67.  *Character or reputation*. Respondent presented strong evidence of his character and reputation in the community and as an attorney. The hearing panel gave particular weight and consideration to the letters submitted on behalf of respondent from four sitting district court judges.

"68.  *Remoteness of prior offenses*. Respondent's prior discipline was remote both in time and in nature to the underlying violations in the present matter.

"69.  *Cooperative attitude toward proceedings*. Respondent has cooperated with the disciplinary investigation and process and respondent's stipulation to the facts and rule violation weigh in mitigation of this matter.

"70.  In addition to the above-cited factors in Standard 3, the hearing panel has thoroughly examined and considered the following Standard:

'4.3   Failure to Avoid Conflicts of Interest

[. . . . ]

'4.33  Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

10

'4.34 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.'

"*Recommendation of the Parties*

"71. The disciplinary administrator recommended published censure by the Kansas Supreme Court pursuant to Kansas Supreme Court Rule 225(a)(5). (2025 Kan. S. Ct. R. at 274).

"72. Respondent recommended informal admonition pursuant to Kansas Supreme Court Rule 225(a)(6).

"*Recommendation of the Hearing Panel*

"73. Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends published censure by the Kansas Supreme Court pursuant to Kansas Supreme Court Rule 225(a)(5).

"74. Costs are assessed against respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2025 Kan. S. Ct. R. at 275). Clear and convincing

evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Prior to the hearing before the disciplinary panel, respondent entered into a joint agreement stipulating to violation of KRPC 1.7. No exceptions were filed in the case, and the findings of fact and conclusions of law in the hearing panel's final report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2025 Kan. S. Ct. R. at 281). The evidence before the panel clearly and convincingly established that the charged misconduct violated KRPC 1.7 (conflict of interest: current clients).

The only issue left for us to resolve is the appropriate discipline. The respondent recommended informal admonition pursuant to Kansas Supreme Court Rule 225(a)(6) (2025 Kan. S. Ct. R. at 274). The Disciplinary Administrator's office recommended published censure. The disciplinary panel recommended published censure based upon its finding of facts, conclusions of law, and the standards.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017). Here, however, we agree with the joint recommendation of the Disciplinary Administrator's office and the panel. See *In re Long*, 315 Kan. 842, 853, 511 P.3d 952 (2022).

ABA Standards for Imposing Lawyer Sanctions sections 9.22 and 9.32 list aggravating and mitigating factors to be considered. Of these, the panel found that the following aggravating factors existed: respondent has prior disciplinary offenses; he has committed multiple offenses; and he has substantial experience in the practice of law. The panel also identified the following mitigating factors: respondent fully cooperated with the disciplinary process and admitted the facts that gave rise to the violation; he

12

generally possesses a good character and reputation among his peers; his actions were not dishonest or selfish; and respondent's prior misconduct was remote in character and in time.

We note that while we ultimately agree with the joint recommendation, we independently review legal conclusions drawn by the panel, even when no exceptions are claimed. *In re Valdez*, 321 Kan. 198, 210, 574 P.3d 835 (2025). Here, the following conclusion of law is not supported by substantial competent evidence: "Respondent recognized a conflict of interest existed and attempted to obtain a waiver from each client, thus respondent knew he was violating his duty to provide conflict-free resolution."

Seeking a waiver is insufficient, by itself, to establish a knowing violation of the duty to provide conflict-free representation. And there are no additional facts to support this legal conclusion. Based on the record, we are unconvinced that it was "highly probable" that respondent knew his waivers would be deficient. Therefore, the finding that respondent knowingly violated KRPC 1.7 is not supported by clear and convincing evidence. See *Murphy*, 312 Kan. at 218. The record does, however, support a negligent violation.

The ABA Standards address negligent conflicts of interest that result in only potential harm to a client with either public censure (referred to as a "reprimand" by the ABA) or informal admonition:

> "4.33 Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

13

"4.34 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client."

Here, informal admonition is inappropriate given the procedural posture of the case. Informal admonition "which is not published and is the least serious form of public discipline . . . may be imposed by a hearing panel or by the disciplinary administrator at the direction of the review committee." Supreme Court Rule 225(a)(6) (2025 Kan. S. Ct. R. at 274). Informal admonition at this stage of proceedings would require a remand to the Disciplinary Administrator. We reserve such action for extraordinary circumstances, which are not present in this case. See *In re Todd*, 308 Kan. 133, 136-37, 418 P.3d 1265 (2018) (taking the extraordinary action of remanding the case to the Office of the Disciplinary Administrator for imposition of an informal admonition when attorney with stage 4 cancer missed diversion requirements by one CLE credit hour).

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that M. Steven Wagle is disciplined by published censure in accordance with Supreme Court Rule 225(a)(5) (2025 Kan. S. Ct. R. at 274) for violating KRPC 1.7.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

14